Filed 9/10/15  In re Taylor F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re TAYLOR F. et al., Persons Coming Under the Juvenile Court Law. | C078717 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. 2715502, 2715602, 2907602) |
| Plaintiff and Respondent, | |
| v. | |
| C. H., | |
| Defendant and Appellant. | |

C. H., mother of the minors, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)  Mother contends substantial

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

1

evidence does not support the juvenile court's findings that the minors were likely to be adopted. We affirm.

FACTS

The minors Taylor F. and Mackenzie F. were first adjudged dependents in 2007 due, in part, to parental substance abuse. The parents successfully reunified with the minors and the dependency was terminated in 2009. Jesse P. was first adjudged a dependent in 2011 also due, in part, to parental substance abuse. Mother again successfully reunified with the minor and the dependency was terminated in 2012.

In October 2013, a petition was filed to detain all three of the minors, Taylor, age 14, Mackenzie, age 11, and Jesse, age 2, due to mother's substance abuse and behavior, which put the minors at risk of serious emotional distress. The juvenile court ordered the minors detained.

The minors were placed together in foster care. The two older minors were afraid to visit mother and, after a few visits, said they did not want to visit her because she was "crazy." Both older girls agreed to participate in therapy. The court sustained the petition, found mother's visitation was detrimental to the minors, and canceled visitation.

The disposition report requested the court grant permission for a 29-day visit with out-of-state relatives. In June 2014, the court adjudged the minors dependents, ordered services to mother, and granted the requested 29-day visit. In August 2014, at a 60-day status review hearing, the court terminated mother's services and set a section 366.26 hearing.

The December 2014 assessment for the section 366.26 hearing recommended termination of parental rights. The minors had been in a proposed adoptive placement with out-of-state relatives since August 2014. The minors were all healthy, developmentally on target with no behavioral concerns, and the two older minors were doing well in school. The proposed adoptive parents were in their thirties, with three young children. They had no criminal or child abuse history and their relative home

2

study pursuant to the Interstate Compact on the Placement of Children (Compact) was approved. They expressed a "strong desire" to parent the minors and understood the necessary commitment to provide them permanence. A strong bond had developed between the minors and the relative caretakers, who claimed the minors as their children. The minors wanted to stay in the placement and be adopted. The assessment stated the minors were adoptable children, physically attractive, curious, and interested in their environment. The social worker believed it was highly likely the minors would be adopted by the current caretakers. In the social worker's opinion, if the adoption did not occur, the minors were highly adoptable by many other applicants. A preliminary search produced nine potential families with approved home studies interested in children with similar characteristics.

At the section 366.26 hearing in January 2015, counsel submitted on the assessment. The court found by "clear and convincing evidence that it [was] likely the [minors] would be adopted" and terminated parental rights.

## DISCUSSION

Mother argues that the facts, including the ages of the two older minors, the existence of the sibling group, and the lack of an adoption home study for the relative placement do not support a finding the minors were generally adoptable. We disagree.

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible, and of solid value—to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when

assessing the sufficiency of the evidence. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.)

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted." (§ 366.26, subd. (c)(1).)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child, "e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (*In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649.) "[T]here must be convincing evidence of the likelihood that adoption will take place within a reasonable time." (*In re Brian P*. (2002) 99 Cal.App.4th 616, 624.) The fact that a prospective adoptive family is willing to adopt the minor is evidence that the minor is likely to be adopted by that family or some other family in a reasonable time. (*In re Lukas B*. (2000) 79 Cal.App.4th 1145, 1154.)

Here, the evidence supports the court's finding that the minors were generally adoptable. The minors were all healthy, developmentally on target, and had no mental health or behavioral problems. The minors had been in the relative placement for over four months by the time of the section 366.26 hearing and were doing well. They were bonded to the relative caretakers who had expressed a strong desire to adopt them and already referred to the minors as their own children. The minors wanted to be adopted by them. The relative caretakers had passed a Compact home assessment to qualify for the initial placement. The social worker reported that there were nine other families who had approved home studies who were interested in children with similar characteristics.

4

We recognize that age and the existence of a sibling group *may* make children difficult to place in an adoptive home. (§ 366.26, subd. (c)(3).) However, those two characteristics are only a part of a child's many qualities which must be assessed to determine adoptability. In this case, the two older girls were 15 and 12 at the time of the section 366.26 hearing and were part of a sibling group of three. To the extent that these characteristics could be considered negative, all three minors had many other outstandingly positive qualities, which made them eminently adoptable. In addition to the relative caretakers, nine other families were interested in adopting children with similar characteristics, which necessarily included the minor's ages and the fact that there was a sibling group. Nothing in the record suggests that the minors are adoptable only because the relative caretakers want to adopt them.

The lack of an adoption home study for the relative caretakers was immaterial. Such a home study is not a prerequisite to termination of parental rights and absence of a home study is not an impediment to termination of parental rights of generally adoptable children. (§ 366.26, subd. (c)(1); see *In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1410 [adoption home study not required prior to termination of parental rights for a specifically adoptable child].) An adoption home study is required only after parental rights are terminated and an adoption petition has been filed. (Fam. Code, § 8715, subd. (b).) Ample evidence supports the juvenile court's finding that the minors were generally adoptable.

DISPOSITION

The orders of the juvenile court are affirmed.

                                            _____ROBIE_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____BUTZ_____, J.